# **EXHIBIT 8**

# COMMERCIAL LEASE

This Lease is made between     **CESAR CARBAJAL** of
herein called Lessor, and     **GIO WINE & SPIRITS CORP.**    , of herein called Lessee.

Lessee hereby offers to lease from Lessor the premises situated in the City of **Corona**, County of **Queens**, State of **New York**, described as **including liquor store, rear studio and rear portion of basement (15x15)** located at **48-01 108th Street, Corona, New York 11368**, upon the following TERMS and CONDITIONS:

1. **Term and Rent.** Lessor demises the above premises for a term of **ten (10) years**, commencing **July 1, 2017** and terminating on **June 31, 2027**, or sooner as provided herein at the annual rent of **SEE RIDER**, payable in equal installments in advance on the first day of each month for that month's rental, during the term of this Lease. All rental payments shall be made to Lessor, to the address specified above.

2. **Use.** Lessee shall use and occupy the premises for **a liquor store**. The premises shall be used for no other purpose.

3. **Care and Maintenance of Premises.** Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other system or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, and structural foundations, which shall be maintained by Lessor. Lessee shall also maintain in good condition such portions adjacent to the premises, such as sidewalks, driveways, lawns and shrubbery, which would otherwise be required to be maintained by Lessor.

4. **Alterations.** Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements, in, to or about the premises.

5. **Ordinances and Statutes.** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee.

6. **Assignment and Subletting.** Lessee shall not assign this Lease or sublet any portion of the premises without prior written consent of the Lessor, **CESAR BARBAJAL**. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this Lease.

7. **Utilities.** All applications and connections for necessary utility services on the demised premises shall be made in the name of Lessee only, and Lessee shall be solely liable for utility charges as they become due, including those for sewer, water, gas, electricity, and telephone services.

8. **Entry and Inspection.** Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within sixty (60) days prior to the expiration of this Leas, to place upon the premises any usual "To Let" or "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

9. **Possession.** If Lessor is unable to deliver possession of the premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this Lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this Lease if possession is not delivered within     days of the commencement of the term hereof.

10. **Indemnification of Lessor.** Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.

11. **Insurance.** Lessee, at his expense, shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor with minimum coverage as follows: **One Million ($1,000,000.00) Dollars**. Lessee shall provide Lessor with a Certificate of Insurance showing Lessor as additional insured. The Certificate shall provide for a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies which may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.

12. **Eminent Domain.** If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premises, shall be taken by eminent domain, this Lease shall terminate on the date when title vests pursuant to such taking. The rent, and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of fixtures and improvements owned by Lessee, and for moving expenses.

13. **Destruction of Premises.** In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this Lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making

{00074135.DOCX;2}

of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made within said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this Lease continuing in effect with the rent proportionality abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this Lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this Lease whether the demised premises be injured or not. A total destruction of the building in which the premises may be situated shall terminate this Lease.

14. **Lessor's Remedies on Default.** If Lessee defaults in **other than** the payment of rent, or any additional rent, or defaults in the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within **five (5) days**, after the giving of such notice (or if such other default is of such nature that it cannot be completely cured within such period, If Lessee does not commence such curing within such **five (5) days** and thereafter proceed with reasonable diligence and in good faith to cure such default), then Lessor may terminate this Lease. On the date specified in such notice the term of this Lease shall terminate, and Lessee shall then quit and surrender the premises to Lessor, but Lessee shall remain liable as hereinafter provided. If this Lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

15. **Security Deposit.** Tenant's security deposit the sum of **Four Thousand Six Hundred Dollars ($4,600.00)** is transferred as security for the performance of Lessee's obligations under this Lease, including without limitation the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all times during the term of this Lease.

16. **Tax Increase.** In the event there is any increase during any year of the term of this Lease in the City, County or State real estate taxes over and above the amount of such taxes assessed for the tax year during which the term of this Lease commences, whether because of increased rate or valuation, Lessee shall pay to Lessor upon presentation of paid tax bills an amount equal to      % of the increase in taxes upon the land and building in which the leased premise are situated. In the event that such taxes are assessed for a tax year extending beyond the term of this Lease, the obligation of Lessee shall be proportionate to the portion of the lease term included in such year.

17. **Common Area Expenses.** In the event the demised premises are situated in a shopping center or in a commercial building in which there are common areas, Lessee agrees to pay his pro-rata share of maintenance, taxes, and insurance for the common area.

18. **Attorney's Fee.** In case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possessions of the premises, **Landlord** shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fees.

19. **Waiver.** No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

20. **Notices.** Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address specified above, or at such other places as may be designated by the parties from time to time.

21. **Heirs, Assigns, Successors.** This Lease is binding upon the inures to the benefit of the heirs, assigns and successors in interest to the parties.

22. **INTENTIONALLY OMITTED.**

23. **Subordination.** This Lease is and shall be subordinated to all existing and future liens and encumbrances against the property.

24. **Radon Gas Disclosure.** As required by law, (Landlord)(Seller) makes the following disclosure: "Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in building in     . Additional information regarding radon and radon testing may be obtained from your county public health unit.

25. **Entire Agreement.** The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made party of this Lease before the parties' execution hereof:     SEE RIDER MADE PART HEREOF.

Signed this      day of            , 2017

By: _____, Lessor
CESAR CARBAJAL

GIO WINE & SPIRITS CORP.

By: _____, Lessee
Giovanni Gutierrez, President

{00074135.DOCX;2}

# RIDER TO COMMERCIAL LEASE

NOTWITHSTANDING ANY OTHER PROVISION OR TERM OF THIS CONTRACT, THE TERM OF THIS RIDER. IN THE CASE OF ANY INCONSISTENCY WITH THE RIDER SHALL PREVAIL OVER THE TERMS OF THE PRINTED CONTRACT.

1. Rent to be paid as follows:

   G 07/01/2017 to 06/31/2019 — ~~$3,162.00~~ → $3300.00 G
   G 07/01/2019 to 06/31/2021 — ~~$3,362.00~~ → $3500.00 G
   G 07/01/2021 to 06/31/2023 — ~~$3,562.00~~ → $3700.00 G
   G 07/01/2023 to 06/31/2025 — ~~$3,762.00~~ → $3900.00 G
   G 07/01/2025 to 06/31/2027 — ~~$3,962.00~~ → $4100.00 G

2. Tenant is responsible for the removal of garbage from the subject premises.

3. Tenant is responsible for maintaining the sidewalk in front of premises clean. Tenant to clean up to and including 18 inch into the street.

4. Tenant is also responsible for snow removal in front of premises.

5. Tenant, at its sole cost and expense, for mutual benefit of Landlord and Tenant, shall maintain personal injury, death or property damage, occurring in or about the leased premises, in or about the adjoining street. Such insurance to afford minimum protection during the term of the Lease of not less than $1,000,000.00 in respect to bodily injury or death to any one person and $1,000,000.00 in respect of any one occurrence and of not less than $1,000.00 for property damage in respect of any one occurrence.

   a. Tenant to obtain for the benefit of Landlord a $100,000.00 legal fire liability policy naming the Landlord as additional insured.
   b. All policies of insurance shall contain an agreement by the insurer that it will not cancel without at least ten (10) day notice to Landlord, if possible.
   c. Tenant to provide policy to Landlord upon each renewal.
   d. Upon failure to provide policies, Landlord may obtain same and the cost shall be deemed added rent and due immediately.

6. Tenant to obtain and maintain active and all necessary permits for the operation of the business, including but not limited to, fire permits, Liquor license health.

7. Tenant agrees that if for any reason Landlord brings a court proceeding against the Tenant, Tenant shall pay the Landlord legal fee.

8. Lease is not to be assigned without the prior written consent of Landlord.

9. Tenant to take premises in "as is" condition. Any alterations or repairs can be done upon written consent from the Landlord only.

{00074286.DOCX;2}

10. Tenant to pay for its own heat. Tenant to put gas sub-meter in Tenant's name at commencement of Lease.

11. Tenant shall have the option to renew for an additional two years at a rent equal to that which a bona fide tenant would pay. Option to be exercised at Landlord's discretion, unless the premises are to be occupied as a liquor store.

12. In the event the Landlord, during the term of the Lease, elects to sell or otherwise transfer the building, Tenant or its designee shall have a period of thirty (30) days after receipt of written notice of the terms to elect to purchase the property on the same terms and conditions.

LANDLORD:

TENANT:

Gio Wine & Spirits Corp.

_____
Cesar Carbajal

By: _____
Name: Giovanni Gutierrez

*personal guarantee*

A140-10
R140-04

# COMMERCIAL LEASE

This lease is made between **Cesar Carbajal** of herein called Lessor, and ~~Jose Geronimo Gutierrez~~ **GLC Wine + Spirits Corp**, of , herein called Lessee.

Lessee hereby offers to lease from Lessor the premises situated in the City of **Corona**, County of **Queens**, State of **NY**, described as **liquor store, 1 rear studio and the rear portion of the basement (approx 13' x 15')**. **48-01 103rd Street** upon the following TERMS and CONDITIONS:

1. **Term and Rent.** Lessor demises the above premises for a term of **10** (year), commencing **6/1/07**, and terminating on **5/31/17**, or sooner as provided herein at the annual rental of **$ 2:00 1st year - see rider** Dollars ($ ), payable in equal installments in advance on the first day of each month for that month's rental, during the term of this lease. All rental payments shall be made to Lessor, at the address specified above.

2. **Use.** Lessee shall use and occupy the premises for **liquor store**. The premises shall be used for no other purpose. ~~Lessee shall...~~

3. **Care and Maintenance of Premises.** Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other system or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, ~~and~~ _____ , which shall be maintained by Lessor. Lessee shall also maintain in good condition such portions adjacent to the premises, such as sidewalks, driveways, lawns and shrubbery, which would otherwise be required to be maintained by Lessor.

4. **Alterations.** Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements, in, to or about the premises.

5. **Ordinances and Statutes.** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee.

6. **Assignment and Subletting.** Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor, ~~which shall not be unreasonably withheld~~. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

7. **Utilities.** All applications and connections for necessary utility services on the demised premises shall be made in the name of Lessee only, and Lessee shall be solely liable for utility charges as they become due, including those for sewer, water, gas, electricity, and telephone services.

8. **Entry and Inspection.** Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within sixty (60) days prior to the expiration of this lease, to place upon the premises any usual "To Let" or "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

9. **Possession.** If Lessor is unable to deliver possession of the premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this lease if possession is not delivered within _____ days of the commencement of the term hereof.

10. **Indemnification of Lessor.** Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.

11. **Insurance.** Lessee, at his expense, shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor with minimum coverage as follows: **1,000,000.00**
Lessee shall provide Lessor with a Certificate of Insurance showing Lessor as additional insured. The Certificate shall provide for a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies which may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.



© E-Z Legal Forms. This product does not constitute the rendering of legal advice or services. This product is intended for informational use only and is not a substitute for legal advice. State laws vary, so consult an attorney on all legal matters. This product was not prepared by a person licensed to practice law in this state.
Rev. 2/99

ADH{

Defendant GBA 0001

12. **Eminent Domain.** If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent, an I any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of fixtures and improvements owned by Lessee, and for moving expenses.

13. **Destruction of Premises.** In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made within in said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionately abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premises may be situated shall terminate this lease.

14. **Lessor's Remedies or Default.** If Lessee defaults in the payment of rent, or any additional rent, or defaults in ~~or~~ other than the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within __5__ days, after the giving of such notice (or if such other default is of such nature that it cannot be completely cured within such period, if Lessee does not commence such curing within such __5__ days and thereafter proceed with reasonable diligence and in good faith to cure such default), then Lessor may terminate this lease ~~and the then~~ _____ ~~upon not less than~~ On the date specified in such notice the term of this lease shall terminate, and Lessee shall then quit and surrender the premises to Lessor, but Lessee shall remain liable as hereinafter provided. If this lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

15. **Security Deposit.** Lessee shall deposit with Lessor on the signing of this lease the sum of __Four thousand Six Hundred__ Dollars ($ __4,600.—__ ) as security for the performance of Lessee's obligations under this lease, including without limitation the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all times during the term of this lease.

16. **Tax Increase.** In the event there is any increase during any year of the term of this lease in the City, County or State real estate taxes over and above the amount of such taxes assessed for the tax year during which the term of this lease commences, whether because of increased rate or valuation, Lessee shall pay to Lessor upon presentation of paid tax bills an amount equal to ____ % of the increase in taxes upon the land and building in which the leased premises are situated. In the event that such taxes are assessed for a tax year extending beyond the term of the lease, the obligation of Lessee shall be proportionate to the portion of the lease term included in such year.

17. **Common Area Expenses.** In the event the demised premises are situated in a shopping center or in a commercial building in which there are common areas, Lessee agrees to pay his pro-rata share of maintenance, taxes, and insurance for the common area.

18. **Attorney's Fees.** In case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, __Landlord__ shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

19. **Waiver.** No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

20. **Notices.** Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address specified above, or at such other places as may be designated by the parties from time to time.

21. **Heirs, Assigns, Successors.** This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

22. In the event the Landlord, during the term of the lease, elects to sell or otherwise transfer the building, Tenant or its designee shall have a period of thirty (30) days in which to ~~after~~ receipt of written notice of the terms to ~~purchase the~~ elect to purchase the property on the same terms and conditions

23. **Subordination.** This lease is and shall be subordinated to all existing and future liens and encumbrances against the property.

24. **Radon Gas Disclosure.** As required by law, (Landlord) (Seller) makes the following disclosure: "Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in _____ . Additional information regarding radon and radon testing may be obtained from your county public health unit.

25. **Entire Agreement.** The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof: __See rider made part hereof__

Signed this ____ day of _____ (year).

By: _____ Lessor   By: __A[signature] Gutierrez__ Lessee

Defendant GBA 0002

## RIDER TO COMMERCIAL LEASE

NOTWITHSTANDING ANY OTHER PROVISION OR TERM OF THIS CONTRACT, THE TERM OF THIS RIDER. IN THE CASE OF ANY INCONSISTENCY WITH THE RIDER SHALL PREVAIL OVER THE TERMS OF THE PRINTED CONTRACT.

1. Rent to be paid as follows:

    | Period | Rent |
    |---|---|
    | 6-1-07 to 5-31-09 | $2300.00 |
    | 6-1-09 to 5-31-11 | $2500.00 |
    | 6-1-11 to 5-31-13 | $2700.00 |
    | 6-1-13 to 5-31-15 | $2900.00 |
    | 6-1-15 to 5-31-17 | $3100.00 |

2. Lease is subject to Tenant giving Landlord a $4,600.00 Security Deposit. Security will be increased upon each rental increase so that rent and security are equal to two months rent at all times.

3. Tenant is responsible for the removal of garbage from the subject premises.

4. Tenant is responsible for maintaining the sidewalk in front of premises clean. Tenant to clean up to and including 18inch into the street.

5. Tenant is also responsible for snow removal in front of premises.

6. Tenant, at its sole cost and expense, for mutual benefit of Landlord and tenant, shall maintain personal injury and property damage liability insurance against claims for bodily injury, death or property damage, occurring in or about the leased premises, in or about the adjoining street. Such insurance to afford minimum protection during the term of the lease of not less than $1,000,000.00 in respect to bodily injury or death to any one person and $1,000,000 in respect of any one occurrence and of not less than $1,000,000 for property damage in respect of any one occurrence.

    a. Tenant to obtain for the benefit of the Landlord a $100,000 legal fire liability policy naming the Landlord as additional insured.
    b. All policies of insurance shall contain an agreement by the insurer that it will not cancel without at least 10 ten day notice to landlord, if possible.
    c. Tenant to provide policy to landlord upon each renewal.
    d. Upon failure to provide policies, landlord may obtain same and the cost shall be deemed added rent and due immediately.

7. Tenant shall have the option to renew for an additional five years at a rent equal to that which a bona fide tenant would pay. Option to be exercised at ~~a~~ (cont'd on next page) seller's sole discretion

Glo Winner Sports Inc.

[signature: Jose Gutierrez]

Defendant GBA 0003

# RIDER TO COMMERCIAL LEASE

NOTWITHSTANDING ANY OTHER PROVISION OR TERM OF THIS CONTRACT, THE TERM OF THIS RIDER. IN THE CASE OF ANY INCONSISTENCY WITH THE RIDER SHALL PREVAIL OVER THE TERMS OF THE PRINTED CONTRACT.

1. Rent to be paid as follows:

   G  07/01/2017 to 06/31/2019 — ~~$9,162.00~~ → $3300.00 G
   G  07/01/2019 to 06/31/2021 — ~~$3,562.00~~ → $3500.00 G
   G  07/01/2021 to 06/31/2023 — ~~$3,562.00~~ → $3700.00 G
   G  07/01/2023 to 06/31/2025 — ~~$3,762.00~~ → $3900.00 G
   G  07/01/2025 to 06/31/2027 — ~~$3,962.00~~ → $4100.00 G

2. Tenant is responsible for the removal of garbage from the subject premises.

3. Tenant is responsible for maintaining the sidewalk in front of premises clean. Tenant to clean up to and including 18 inch into the street.

4. Tenant is also responsible for snow removal in front of premises.

5. Tenant, at its sole cost and expense, for mutual benefit of Landlord and Tenant, shall maintain personal injury, death or property damage, occurring in or about the leased premises, in or about the adjoining street. Such insurance to afford minimum protection during the term of the Lease of not less than $1,000,000.00 in respect to bodily injury or death to any one person and $1,000,000.00 in respect of any one occurrence and of not less than $1,000.00 for property damage in respect of any one occurrence.

   a. Tenant to obtain for the benefit of Landlord a $100,000.00 legal fire liability policy naming the Landlord as additional insured.
   b. All policies of insurance shall contain an agreement by the insurer that it will not cancel without at least ten (10) day notice to Landlord, if possible.
   c. Tenant to provide policy to Landlord upon each renewal.
   d. Upon failure to provide policies, Landlord may obtain same and the cost shall be deemed added rent and due immediately.

6. Tenant to obtain and maintain active and all necessary permits for the operation of the business, including but not limited to, fire permits, Liquor license health.

7. Tenant agrees that if for any reason Landlord brings a court proceeding against the Tenant, Tenant shall pay the Landlord legal fee.

8. Lease is not to be assigned without the prior written consent of Landlord.

9. Tenant to take premises in "as is" condition. Any alterations or repairs can be done upon written consent from the Landlord only.

{00074286.DOCX:2}

Defendant GBA 0004

**RECEIPT**  DATE 06-01-2009  NO. 714899
RECEIVED OF GIOVANNI GUTIERREZ
ADDRESS 4801 108 St CORONA NY 11368
FOUR HUNDRED                                   $ 400.00
FOR RENT OF RENTAL DEPOSIT "LIQUOR STORE"
                         INCREASE
HOW PAID: CASH ✓
FROM 06-01-2009
TO 06-01-2011
BY [signature] C.C.

**RECEIPT**  DATE 06-01-2011  NO. 714954
RECEIVED OF GIOVANNI GUTIERREZ
ADDRESS 48-01 108 St. CORONA NY 11368
FOUR HUNDRED + 00/cts                $ 400.00
FOR RENT OF LIQUOR STORE RENTAL DEPOSIT INCREASE
HOW PAID: CASH ✓
FROM 06-01-2011
TO 06-01-2013
BY [signature] C.C.

**RECEIPT**  DATE 06-01-2013  NO. 714963
RECEIVED OF GIOVANNI GUTIERREZ
ADDRESS 48-01 108th ST. CORONA NY 11368
FOUR HUNDRED + 00/cts               $ 400.00
FOR RENT OF LIQUOR STORE RENTAL INCREASE
HOW PAID: CASH ✓
FROM 06-01-2013
TO 06-01-2015
BY [signature] C.C.

**RECEIPT**  DATE 06-01-2015  NO. 714974
RECEIVED OF Giovanni Gutierrez
ADDRESS 48-01 108th St, Corona NY 11368
FOUR HUNDRED + 00cts — $ 400⁰⁰
FOR RENT OF Liquor Store Rental Increase

| ALWAYS SAVE YOUR RECEIPTS | HOW PAID | |
|---|---|---|
| | CASH | ✓ |
| | CHECK | |
| | MONEY ORDER | |

FROM 06-01-2015
TO 06-01-2017
BY C.C.

---

**RECEIPT**  DATE 06-01-2017  NO. 714986
RECEIVED OF Giovanni Gutierrez
ADDRESS 48-01 108th St. Corona NY 11368
FOUR HUNDRED and 00cts — $ 400⁰⁰
FOR RENT OF Liquor Store Rental Increase

| ALWAYS SAVE YOUR RECEIPTS | HOW PAID | |
|---|---|---|
| | CASH | ✓ |
| | CHECK | |
| | MONEY ORDER | |

FROM 06-01-2017
TO 06-01-2019
BY C.C.

---

**RECEIPT**  No. 985600
DATE 06/01/2020
FROM Giovanni Gutierrez  $ 200⁰⁰
48-01 108th St. Corona NY 11368  DOLLARS
○ FOR RENT
● FOR Liquor store rental increase

| ACCT. | | ○ CASH | |
|---|---|---|---|
| PAID | | ○ CHECK | FROM 06/01/2019 TO 06/01/21 |
| DUE | | ○ MONEY ORDER | |
| | | ○ CREDIT CARD | BY |

A-1152
T-4161

Defendant GBA 0006

## Tenant Estoppel Certificate

1. This estoppel certificate concerns the lease described below:
    Landlord: Cesar Carbajal and the Cesar Carbajal Trust, dated
    Tenant: Gio Wine & Spirits Corp.
    Leased Premises: 48-01 108 Street, Corona, NY 11368, 1st floor storefront + rear studio apartment and part of basement (approximately 13'x15') 6 (15X15) 6
    Commencement Date of Lease: June 1, 2007;

2. Tenant certifies that:
    a. As of the date Tenant signs this certificate, neither landlord nor tenant is in default of the lease;
    b. The monthly rent to be paid through the end of the lease is as follows:
        i. Present to 6/30/2021: $3,500.00/month;
        ii. 7/1/2021 to 6/30/2023: $3,700.00/month;
        iii. 7/1/2023 to 6/30/2025: $3,900.00/month; and
        iv. 7/1/2023 to 6/30/2027: $4,100.00/month;
    c. The next rent payment is due on May 1, 2021.
    d. Tenant has not paid Landlord any rent more than 30 days in advance except: none;
    e. Tenant deposited $6,800.00 with Landlord as a security deposit under the lease;
    f. As of the date Tenant signs this certificate, Tenant has no claim of offset against rent except for: none;
    g. Tenant has accepted the leased premises, is in possession of the leased premises, and all improvements to the leased premises have been made;
    h. Tenant has no ownership interest in the property in which the leased premises are located; and
    i. Tenant had a 30 day right of first refusal to purchase the premises under the same terms of the sale to purchaser. Tenant received notice from Landlord on September 14, 2020 of it's right to purchase the property. Tenant is declining to purchase the property and has let such right of first refusal lapse.

Tenant understand that this certificate will be delivered to the purchaser, Bennyahoo Ahdoot, and/or his assigns in interest, and that these parties are relying on the representations in this certificate.

Tenant: Gio Wine & Liquor Corp.        Date: 4/21/21

By: _____
    Geovani Gutierrez, President

Defendant GBA 0007