**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel: (347) 796-0712
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONID TREYGER, | **PLAINTIFF'S REPLY TO DEFENDANT GBA 526 LLC'S STATEMENT OF MATERIAL FACTS** |
| Plaintiff, | |
| -against- | |
| GIO WINE & SPIRITS CORP., GBA 526 LLC, | **CASE NO.: 23-cv-2099-HG** |
| Defendants. | |

LEONID TREYGER (the "Plaintiff"), by and through his attorneys, in compliance with Local Rule 56.1 and Individual Practice Rules of Judge Hector Gonzalez, submits his reply to Defendant GBA 526 LLC's ("GBA") Statement of Material Facts.

### A.  The Instant Federal Court Action

1.      Plaintiff Leonid Treyger's (the "Plaintiff") Amended Complaint, filed on September 8, 2023 [Dckt. No. 47] (the "Amended Complaint") alleges violations of Title III of 42 U.S.C. 12181, *et seq*. (the "ADA"), the New York State Executive Law § 296, *et seq*. (the "NYSHRL"), New York State Civil Rights Law ("NYSCRL"), and the Administrative Code of

the City of New York § 8-107, *et seq.* (the "NYC Code"). [*See* Mizrahi Decl. at ¶ 3] [Ex. A at ¶¶ 155-271].¹

> **Plaintiff's position.** The statement in ¶ 1 is not disputed. However, Mr. Mizrahi's declaration ("Mizrahi Decl.") referred to above was neither filed with the Court nor sent to Plaintiff. "Ex. A." referred to in ¶ 1 is GBA's Statement of Material Facts [ECF Doc. No. 74-1]. Not having any of the cited information it ends at ¶ 37.

2.      Plaintiff alleges that he is disabled as defined by the ADA and uses a motorized mobility scooter, for mobility. [*Id.*] [Ex. A at ¶¶ 72, 76].

> **Plaintiff's position.** The statement in ¶ 2 is not disputed. However, "*Id.*" refers to Mizrahi Decl. cited in ¶ 1, which was neither filed with the Court nor sent to Plaintiff.  "Ex. A" refers to GBA's Statement of Material Facts [ECF Doc. No. 74-1]. Not having any of the cited information it ends at ¶ 37 and does not have "¶¶ 72, 76".

3.      On an unspecified date, at an unspecified time, Plaintiff allegedly attempted to purchase an item in the liquor store, located at 48-01 108ᵗʰ Street, Corona, NY 11368 (the "Subject Premises"), operated by defendant Gio Wine & Spirits Corp. ("Gio Wine"), as tenant, and owned by GBA as landlord. [*Id.*] [Ex. A at ¶ 104].

> **Plaintiff's position.** The statement in ¶ 3 is not accurate. The date is specified. Plaintiff attempted to enter and shop inside Gio Liquors store in May 2021, improperly referred to by GBA as "Gio Wine". [Affidavit of Plaintiff Leonid Treyger ("APLT"), Exhibit 2, at ¶ 11] The date and time were May 20, 2021, at 11:40 am. [Plaintiff's Receipt, Exhibit 3] As stated above, "*Id.*" refers to Mizrahi Decl. cited in ¶ 1, which was neither filed with the Court nor sent to Plaintiff.  "Ex. A" refers to GBA's Statement of Material Facts [ECF

---

¹ The "Mizrahi Decl." refers to the Declaration of Jason Mizrahi, Esq., and the exhibits annexed thereto, filed simultaneously herewith.

Doc. No. 74-1]. Not having any of the cited information it ends at ¶ 37 and does not have "¶ 104".

4.       The Amended Complaint identifies one (1) category of alleged barrier in the Subject Premises, *to wit*: (i) an inaccessible entrance / egress. [*Id.*] [Ex. A at ¶¶ 106-114, 128-129, 174, 185-187]; [*see also* Dckt. No. 56 at p.1].

**Plaintiff's position.** The statement in ¶ 4 is not supported by Exhibit A, referred to by GBA. "Ex. A" refers to GBA's Statement of Material Facts [ECF Doc. No. 74-1]. Not having any of the cited information it ends at ¶ 37 and does not have "¶¶ 106-114, 128-129, 174, 185-187".

5.       In its operative answer to the Amended Complaint, GBA denied all of Plaintiff's material allegations, and interposed affirmative defenses on the basis that, *inter alia*: Plaintiff lacks standing to sue. [*Id.* at ¶ 4] [Ex. B at ¶ 295].

**Plaintiff's position.** The statement in ¶ 5 is not supported. GBA failed to file Exhibit B with the Court and did not send it to Plaintiff. "Id." refers to Mizrahi's Declaration, which was also neither filed with the Court nor sent to Plaintiff. In its Answer to Plaintiff's Amended Complaint [ECF Doc. No. 50] in ¶ 295 GBA stated that "Plaintiff is not entitled to the injunctive relief she seeks because she lacks standing to seek or receive such relief." Mr. Leonid Treyger, Plaintiff, is not aware of the woman referred to in that paragraph. No other paragraph in that Answer refers to standing. All other affirmative defenses are meritless, nonsensical, and false, such as, for example, ¶ 291, which states that Plaintiff "failed to mitigate … her damages" and ¶ 296, which states that Plaintiff's claims "are barred by the doctrine of unclean hands", both of which are affirmative defenses used in contract dispute and are inapplicable in this litigation.

6.      In its operative answer to the Amended Complaint, GBA also asserted a cross-claim against co-defendant Gio Wine. [*Id.* at ¶ 4] [Ex. B at ¶¶ 301-308].

**Plaintiff's position.** Plaintiff does not dispute that GBA asserted a cross-claim against its co-defendant Gio Wine. However, that statement is not supported by the documents cited by GBA. "Id." refers to Mizrahi's Decl., which was neither filed with the Court nor sent to Plaintiff. Exhibit B was also neither filed with the Court nor sent to Plaintiff.

**B.  The Subject Premises**

7.      The Subject Premises is located within a building constructed in 1994. [*Id.* at ¶ 3] [Ex. A at ¶¶ 12, 156, 201].

**Plaintiff's position.** Plaintiff does not dispute GBA's statement that the Subject Premises, i.e. Defendants' store Gio Liquors, and the ramp leading to its only entrance, are located within the building constructed in 1994.

8.      Gio Wine, as tenant, entered into a commercial lease with non-party Cesar Carbajal, as landlord, for the Subject Premises, in or around June 1, 2007. [*Id.* at ¶ 5] [Ex. C].

**Plaintiff's position.** Plaintiff cannot verify the truth of that statement by referring to the cited documents. "Id." refers to Mizrahi's Decl. Neither it, nor Exhibit C referred to in ¶ 8 were either filed with the Court or sent to Plaintiff.

9.      GBA, as landlord, purchased, and took possession of, the Subject Premises, as landlord, in or around June 2, 2021. [*Id.* at ¶ 6] [Ex. D].

**Plaintiff's position.** Plaintiff cannot verify the truth of that statement by referring to the cited documents. Plaintiff is not able to review the information in ¶ 9, because GBA did not file the referred to Exhibit D with the Court. "Id." refers to Mizrahi's Declaration, which was not filed with the Court.

10.     Gio Wine has remained a tenant of the Subject Premises since March 2021. [*Id.* at ¶ 3] [Ex. A at ¶ 17].

**Plaintiff's position.** Plaintiff is not able to review the information in ¶ 10, because GBA did not file the referred to exhibit with the Court. "Id." refers to Mizrahi's Declaration, which was not filed with the Court.

11.     Gio Wine operates a liquor store within the Subject Premises. [*Id.* at ¶ 3] [Ex. A at ¶ 13]; [*Id.* at ¶ 5] [Ex. C].

**Plaintiff's position.** Plaintiff is not disputing GBA's statement in ¶ 11.


**C.  Plaintiff's One – and Only – Visit to the Subject Premises**

12.     Plaintiff has lived in Jackson Heights, Queens, for over thirty (30) years. [*Id.* at ¶ 7] [Ex. E at ¶ 20].

**Plaintiff's position.** Plaintiff does not dispute the statement in ¶ 12.

13.     Plaintiff's residential address is approximately 2.3 miles away from the Subject Premises. [*Id.*] [Ex. E at ¶ 23].

**Plaintiff's position.** Plaintiff does not dispute the statement in ¶ 13.

14.     In the thirty (30) + years that Plainitff has lived in Jackson Heights, Queens, he has only visited the Subject Premises once, on an unspecified date in May 2021. [*Id.* at ¶ 3] [Ex. A at 104].

**Plaintiff's position.** Defendant's statement is not supported by facts. Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 14. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit A refers to GBA's Statement of Material Facts, which ends at ¶ 37 and does not have ¶ 104. Plaintiff uses his Motorized Scooter "to travel to shop in stores, as well as to dine in

restaurants in Woodside, North Corona, Corona, Elmhurst, Astoria, and other city neighborhoods." [APLT, Exhibit 2, at ¶ 24] Plaintiff sometimes visits "Woodside, North Corona, Corona, Elmhurst, Astoria, and other city neighborhoods in a van." [APLT, Exhibit 2, at ¶ 25] Corona borders Jackson Heights, the neighborhood in which Plaintiff lives. [APLT, Exhibit 2, at ¶ 26] Plaintiff enjoys taking trips to Corona on his Motorized Scooter. [APLT, Exhibit 2, at ¶ 27] Plaintiff often travels to Flushing Meadows Corona Park, where he meets with his friends and acquaintances, who regularly frequent the park. [APLT, Exhibit 2, at ¶ 28] Plaintiff enjoys shopping in Corona. [APLT, Exhibit 2, at ¶ 29] Plaintiff enjoys having meals in restaurants in Corona. [APLT, Exhibit 2, at ¶ 30] Plaintiff enjoys "visiting New York Hall of Science in Corona. [APLT, Exhibit 2, at ¶ 31] Plaintiff enjoys riding his "Motorized Scooter on Corona's streets." [APLT, Exhibit 2, at ¶ 32] "Flushing Meadows Corona Park is in Corona." [APLT, Exhibit 2, at ¶ 33] Plaintiff enjoys visiting Flushing Meadows Corona Park and comes to it approximately once per month. [APLT, Exhibit 2, at ¶ 34] "Flushing Meadows Corona Park is approximately one city block away from Gio Liquors." [APLT, Exhibit 2, at ¶ 35] Plaintiff rides to Corona on his Motorized Scooter approximately once per month. [APLT, Exhibit 2, at ¶ 36] Sometimes Plaintiff passes next to Gio Liquors on his way to Flushing Meadows Corona Park. [APLT, Exhibit 2, at ¶ 37] In May 2021, Plaintiff rode in a van to Corona and was dropped off near Flushing Meadows Corona Park, not far from the store Gio Liquors. [APLT, Exhibit 2, at ¶ 38] The date and time were May 20, 2021, at 11:40 am. [Plaintiff's Receipt, Exhibit 3] Plaintiff wanted to make a purchase inside the store Gio Liquors. [APLT, Exhibit 2, at ¶ 39] To summarize, Plaintiff is in Corona approximately once per month and has passed by Gio Liquors many times throughout the years.

15.     On the one (1) occasion where Plaintiff did visit the Subject Premises, Plaintiff successfully completed a purchase. [*Id.*] [Ex. A at ¶¶ 146]; *see also* [*Id.* at ¶ 8] [Ex. F]

**Plaintiff's position.** Defendant's statement is not supported by facts. Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 15. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit A refers to GBA's Statement of Material Facts, which ends at ¶ 37 and does not have ¶ 146. Exhibit F was also not filed with the Court. Plaintiff was next to Gio Liquors store many times throughout the 30 years he was in Corona. *See* Plaintiff's response to ¶ 14, above. Plaintiff attempted to enter and shop in Gio Liquors only once, because it was not accessible to him due to the architectural barrier, i.e. the steep ramp leading to its only entrance. "While sitting on [his] Motorized Scooter, [Plaintiff] tried to enter Gio Liquors by riding up the ramp to reach its sole entrance door." [APLT, Exhibit 2, at ¶ 40] "When [Plaintiff] started riding up the ramp, [he] realized that it was very steep and that it would be dangerous to continue riding all the way to its top. [Plaintiff] was afraid that [his] Motorized Scooter would tip over and fall backwards, causing [him] to suffer a serious and potentially fatal injury." [APLT, Exhibit 2, at ¶ 41] "While riding up the ramp, [Plaintiff] noticed that its landing is slanted." [APLT, Exhibit 2, at ¶ 42] Plaintiff tried to find another entrance to Gio Liquors, but there was none. [APLT, Exhibit 2, at ¶¶ 43 – 47] Plaintiff made diligent efforts to receive assistance from the store's employees, but could not find a way to alert them, as there was no buzzer outside the store for him to ring, nor telephone number for him to call, nor instructions in the store's windows. [APLT, Exhibit 2, at ¶¶ 48 – 55] "Not being able to enter the store by riding up its ramp to its only entrance, and not being able to alert the store's employee of [his] need for assistance, [Plaintiff] realized that

[he] would not be able to buy anything in the store without assistance." [APLT, Exhibit 2, at ¶ 55] "Consequently, [Plaintiff] requested someone to purchase for [him] an item [he] wanted to buy at the store." [APLT, Exhibit 2, at ¶ 56] "That person agreed to help [Plaintiff] and walked up the ramp leading to Gio Liquors' entrance, entered the store, bought the item [Plaintiff] wanted, obtained a receipt, exited the store, walked down the ramp, and gave both the item and the receipt to [Plaintiff]." [APLT, Exhibit 2, at ¶ 57] In summary, Plaintiff never entered Gio Liquors, because the ramp in front of it was dangerously steep, potentially endangering his life, did not receive any assistance from the store's employee and had to rely on assistance from another person to make a purchase. [APLT, Exhibit 2]

16.     On the one (1) occasion where Plaintiff did visit the Subject Premises, Plaintiff did ambulate past the Subject Premises' exterior ramp. [*Id.* at ¶ 3] [Ex. A at ¶¶ 106-110]; [*see also* Dckt. No. 56 at p. 1].

**Plaintiff's position.** Defendant's statement is not supported by facts. Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 16. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit A refers to GBA's Statement of Material Facts, which ends at ¶ 37 and does not have ¶¶ 106-110. "Dckt. No. 56 at p. 1" to which GBA refers is the Court's Order of November 27, 2023 [ECF Doc. No. 56], which states neither that Plaintiff visited Gio only "on the one (1) occasion" and that he "ambulate[d] past the Subject Premises' exterior ramp." GBA's statement is misleading and the Court should order it to not mislead it in the future. In both ¶¶ 15 and 16, Plaintiff explained that he visits Corona approximately once per month and that he passed next to the store Gio on many occasions over the years. He never entered it

because the ramp in front of it is steep and dangerous. He did not purchase anything in Gio Liquors until May 20, 2021, because it is neither possible for Plaintiff to enter the store nor to request assistance of its employee. [APLT, Exhibit 2, at ¶¶ 11 – 57]

**D.  Plaintiff's Genuine Intention to Patronize the Subject Premises**

17.    Plaintiff has not returned to the Subject Premises since his one – and only – visit, in May 2021. [*Id.* at ¶ 7] [Ex. E at ¶ 20].

**Plaintiff's position.** Defendant's statement is not supported by facts. Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 17. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit E was also not filed with the Court. In both ¶¶ 15 and 16, Plaintiff explained that he visits Corona approximately once per month and that he passed next to the store Gio on many occasions over the years. He never entered it because the ramp in front of it is steep and dangerous. He did not purchase anything in Gio Liquors until May 20, 2021, because it is neither possible for Plaintiff to enter the store nor to request assistance of its employee. [APLT, Exhibit 2, at ¶¶ 11 – 57]

18.    Plaintiff does not have any concrete plans to return to the Subject Premises in the future. [*Id.*] [Ex. E at ¶¶ 60-66].

**Plaintiff's position.** Defendant's statement is both false and not supported by facts. Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 18. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit E was also not filed with the Court. Contrary to GBA's false statement, Plaintiff intends to return to Gio. "The store Gio Liquors is in Corona, Queens, NY." [APLT, Exhibit 2, at ¶ 60] "Gio Liquors is 2.3 miles from [Plaintiff's] home in Jackson Heights, Queens." [APLT, Exhibit 2, at ¶ 61] "[Plaintiff] visit[s] Corona about once per month."

9

[APLT, Exhibit 2, at ¶ 62] "Gio Liquors is located approximately one city block away from Flushing Meadows Corona Park, which [Plaintiff] visit[s] about once per month." [APLT, Exhibit 2, at ¶ 63] "It is convenient for [Plaintiff] to shop at Gio Liquors when [he] travel[s] to Flushing Meadows Corona Park." [APLT, Exhibit 2, at ¶ 64] "[Plaintiff] intend[s] to visit Gio Liquors again in the future when [he] visit[s] Flushing Meadows Corona Park, purchase items offered for sale in it and enjoy its services as soon as the architectural barriers are removed." [APLT, Exhibit 2, at ¶ 65] "[Plaintiff] cannot shop in the store Gio Liquors until the architectural barriers are removed, because [he] cannot enter it." [APLT, Exhibit 2, at ¶ 66]

### E. Plaintiff's Serial Litigation History

19.     Plaintiff is a self-proclaimed "tester". [*See* Mizrahi Decl. at ¶ 3] [Ex. A at ¶¶ 137 – 154]; [*Id.* at ¶ 7] [Ex. E at ¶¶ 67-76].

**Plaintiff's position.** Although GBA failed to submit the documents to which it cites, Plaintiff is indeed a tester. Plaintiff is "an advocate of the rights of disabled persons and a tester for the purpose of asserting [his] civil rights." [APLT, Exhibit 2, at ¶ 67] "[Plaintiff] visit[s] places of public accommodation to determine whether they are compliant with the ADA." [APLT, Exhibit 2, at ¶ 68] "Completely independent of [Plaintiff's] personal desire to have access to the store Gio Liquors free of illegal barriers to access, [Plaintiff is] a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations." [APLT, Exhibit 2, at ¶ 69] "Following completion of a legal action, [Plaintiff] intends to return to the same place of public accommodation to ensure its compliance with the ADA." [APLT, Exhibit 2, at ¶ 73]

20.     As of the date of this filing, Plaintiff has filed a combined total of thirteen (13) lawsuits in the Eastern District of New York. [*Id.* at ¶ 9] [Ex. G].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 20. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit G was also not filed with the Court. Plaintiff is a disabled individual, who was discriminated against by different businesses in both Queens and Brooklyn and filed lawsuits against them in the Eastern District of New York.

21.       In nearly all of these cases, Plaintiff is represented by same law counsel – Michael Grinblat, Esq. ("Attorney Grinblat") and Daniel Stewart Berke, Esq. ("Attorney Berke"). [*Id*.].

**Plaintiff's position.** GBA's statement in ¶ 21 is misleading. Although Attorney Michael Grinblat represented Plaintiff in all civil rights cases filed by Plaintiff in the Eastern District of New York, Attorney Daniel Steward Berke represents him in only the present case.

22.       As of the date of this filing, Attorney Grinblat and Attorney Berke have filed a combined total of 72 lawsuits in the Southern and Eastern Districts of New York, and in the Supreme Courts of the State of New York. [*Id*. at ¶ 10] [Ex. H].

**Plaintiff's position.** GBA's statement in ¶ 22 is misleading. Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 22. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit H was also not filed with the Court. Attorney Daniel Berke is a co-counsel with Attorney Michael Grinblat only in the present lawsuit. Michael Grinblat filed lawsuits, in which he represented his father, Semyon Grinblat, in civil rights cases based on discrimination of Mr. Grinblat by businesses. Many of these cases were dismissed when Plaintiff Semyon Grinblat passed away in the tragic house fire in February 2021 and Michael Grinblat never received any attorney fees or reimbursement for any expenses for his work representing his client in the cases that were dismissed. Many cases involving Plaintiffs Semyon

Grinblat and Leonid Treyger, filed in the Eastern District settled, many businesses remediated their ADA violations in compliance with the settlement agreements, and thousands of disabled people now have access to the businesses – all of which are places of public accommodation – against which Attorney Michael Grinblat filed lawsuits on behalf of his clients. Michael Grinblat never filed any lawsuits on behalf of Plaintiff in the New York State Supreme Courts. Information about the filed lawsuit is public and no citation is needed.

### F.  Plaintiff's Expert Disclosures

23.     Plaintiff served his initial Fed.R.Civ.P. 26(a)(2) expert disclosures on November 30, 2023 (the "November 30th Expert Disclosures"). [*Id*. at ¶ 11] [Ex. I].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 23. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit I was also not filed with the Court. On November 30, 2023, Plaintiff sent Rule 26 Supplemental Automatic Disclosure to Defendants [Exhibit 4], in which he notified them that Marcia Esquenazi, Architect, will be Plaintiff's expert witness. Plaintiff notified Defendants that "Ms. Esquenazi examined the ramp and interior area of the store accessible to the public." Plaintiff also notified Defendants that Mr. Sajo Dervisevic, General Contractor, "and/or his affiliated construction company will provide the cost estimate of construction of the new ramp."

24.     Plaintiff's November 30th Expert Disclosures identified two (2) purported expert witnesses: (i) Marcia Esquenazi; and (ii) Sajo Dervisevic. [*Id*.].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 24. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Please see Plaintiff's response to ¶ 23, above.

25.     Plaintiff served his supplemental Fed.R.Civ.P. 26(a)(2) expert disclosures on December 4, 2023 (the "December 4th Expert Disclosures"). [*Id*. at ¶ 12] [Ex. J].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 25. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit J was also not filed with the Court. On December 4, 2023, Plaintiff sent to Defendants his Rule 26 Second Supplemental Disclosure Statement.

26.     Plaintiff's December 4th Expert Disclosures identified two (2) purported expert witnesses: (i) Marcia Esquenazi; and (ii) Val Dobrova. **[***Id***.].**

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 26. On December 4, 2023, Plaintiff sent to Defendants his Rule 26 Second Supplemental Disclosure Statement, in which he informed Defendants that Ms. Marcia Esquenazi, architect, will be Plaintiff's Expert witness. Plaintiff also notified Defendants that Mr. Val Dobrova, general contractor, is providing the cost estimate regarding the proposed ramp.

27.     On December 4, 2023, Plaintiff also produced: (i) a five (5) page affidavit of Marcia Esquenazi (the "December 4th Esquenazi Aff."); and (ii) a one (1) page affidavit of Val Dobrova (the "December 4th Dobrova Aff.").  [*Id*. at ¶¶ 13, 14] [Exs. K, L].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 27. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit K and L were also not filed with the Court. On December

4, 2023, Plaintiff sent to Defendants Affidavit of Marcia Esquenazi. [Exhibit 6] On the same day, Plaintiff also sent Defendants Affidavit of Val Dobrova, which was two pages long. [Exhibit 7]

28.      On December 18, 2023, Plaintiff produced a one (1) page affidavit of a purported accounting expert, Bruce Schwartz (the "December 18th Schwartz Aff."). [*Id*. at ¶ 15] [Ex. M].

> **Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 28. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit M was also not filed with the Court. On December 18, 2023, Plaintiff sent an Affidavit of Bruce Schwartz, whom Plaintiff initially wanted to be his expert. GBA stated that it intended to depose Mr. Schwartz but did not agree to depose him on the day Mr. Schwartz was available. On December 21, 2023, Plaintiff notified GBA that because GBA failed to select a sooner date to depose Mr. Schwartz, Plaintiff would make Ms. Alina Rits, C.P.A., available to be deposed as Plaintiff's expert regarding IRS Form 8826 tax credit. On the same day, Plaintiff sent Defendants an Affidavit of Ms. Alina Rits, C.P.A. her curriculum vitae and the completed IRS Form 8826 tax credit. [Exhibit 8]

29.      On December 18, 2023, Plaintiff also produced a supplemental, seven (7) page, affidavit of Marcia Esquenazi (the "December 18th Esquenazi Aff."). [*Id*. at ¶ 16] [Ex. N].

> **Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 29. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit N was also not filed with the Court. On December 18, 2023, Plaintiff sent Defendants Supplemental Affidavit of Marcia Esquenazi, together with additional photos and architectural drawing of the existing ramp at Gio Liquors. [Exhibit 13]

30.     On December 21, 2023, Plaintiff produced a one (1) page affidavit of a second purported accounting expert, Alina Rits (the "December 21st Rits Aff."). [*Id*. at ¶ 17] [Ex. O].

> **Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 30. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit O was also not filed with the Court. On December 21, 2023, Plaintiff sent Defendants Affidavit of Ms. Alina Rits, C.P.A., her curriculum vitae and the completed IRS Form 8826 tax credit. [Exhibit 8]

31.     On January 8, 2024, Plaintiff submitted additional disclosures, consisting of two (2) purported notices dated March 19, 2023, addressed to the New York State Civil Rights Bureau and New York City Commission on Human Rights, regarding Plaintiff's intention to file this action (the "January 8th Production"). [*Id*. at ¶ 18] [Ex. P].

> **Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 31. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit P was also not filed with the Court. On January 8, 2024, Plaintiff sent Defendants his proof of service of notices of this lawsuit on both the New York City Commission on Human Rights and the New York State Civil Rights Bureau. Although Plaintiff did not send Defendants his proof of service of notices of his Amended Complaint to the same government entities, he includes them here, as well. [Exhibit 9]

32.     On January 16, 2024, Plaintiff submitted additional disclosures, consisting of an eight (8) page affidavit of Plaintiff (the "January 16th Treyger Aff."). [*Id*. at ¶ 7] [Ex. E].

> **Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 32. "Id." refers to Mizrahi's Declaration, an exhibit which was

not filed with the Court. Exhibit E was also not filed with the Court. On January 16, 2024, Plaintiff sent Defendants Plaintiff's sworn affidavit. [Exhibit 2]

33.      The: (i) December 4th Esquenazi Aff.; (ii) December 4th Dobrova Aff.; (iii) December 18th Schwartz Aff.; (iv) December 18th Esquenazi Aff.; (v) December 21st Rits Aff.; and (vi) January 16th Treyger Aff. consider one (1) proposal for creating an accessible route from the sidewalk to the store entrance, *to wit*: the construction of a permanent ramp. [*Id*. at ¶¶ 7, 13-17] [Ex. E, K-O].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 33. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibits E, K-O, were also not filed with the Court. In her affidavits, Ms. Esquenazi explained how to remediate the ramp leading to the sole entrance of Defendants' store Gio Liquors and why variance by the city agencies will be granted. [Exhibits 6 and 11] Plaintiff also submitted architectural drawings to Defendants. The other experts' affidavits are regarding construction cost.

34.      According to the December 4th Dobrova Aff., "[c]onstruction of the ramp will cost $13,200." [*Id*. at ¶ 14] [Ex. L].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 34. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. Exhibit L was also not filed with the Court. According to the affidavit of Mr. Val Dobrova, construction of the ramp will cost $13,200. [Exhibit 7] According to the affidavit of Ms. Alina Rits, C.P.A., "[i]f a store owner or building owner spends $13,700 to remediate ADA violations and then applies for and is granted the IRS

Form 8826 Disabled Access Credit Tax Credit, then that person or entity will effectively

spend $8,700 dollars on such remediation with the benefit of this tax credit." [Exhibit 8]

35.      According to the December 4th Dobrova Aff., "[C]ompletion of [the permanent

ramp] will take three business days and involve two workers." [*Id.*].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA

relies in its contention in ¶ 35. "Id." refers to Mizrahi's Declaration, an exhibit which was

not filed with the Court. Plaintiff does not dispute the statement in ¶ 35. [Exhibit 7]

36.      According to the December 18th Esquenazi Aff., "[t]he cost to build [a permanent

ramp]…will cost approximately $8,900 and may be achieved by purchasing a prefabricated metal

ramp." [*Id.* at ¶ 16] [Ex. N].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA

relies in its contention in ¶ 36. "Id." refers to Mizrahi's Declaration, an exhibit which was

not filed with the Court. Exhibit N was not filed with the Court. In Ms. Esquenazi's

Supplemental Affidavit, dated December 13, 2023, she stated that "the cost to build the

Title III ADA compliant proposed ramp … as depicted in my architectural drawings

attached hereto, will cost approximately $8900 and may be achieved by purchasing a

prefabricated metal ramp. It is expected to be completed within two days and will be

performed by a welder." [Exhibit 6] In her Second Supplemental Affidavit, dated January

26, 2024, Ms. Esquinazi stated the following: "To make the path of travel to the front

entrance door of the store Gio Liquors, located at 48-01 108th Street, Corona, NY, more

accessible for people with disabilities, an electrical door assist may be installed, as

specified in the 2022 NYC Department of Buildings ("DOB") Code §1101.5.8 entitled

Automatic Doors." … "The cost of an electric door assist is approximately $400." "The

existing ramp is steep. It has a slope ratio of approximately 1:6, in violation of the ADA Guidelines and both the NY State Building Code and the NYC Building Code. The steepness of the existing ramp at a slope ratio of 1:6 is dangerous to both able bodied and disabled individuals." "The City of New York Mayor's Office of People with Disabilities, the DOB, and the NYC Department of Transportation ("DOT") recognize through review of field conditions and by providing application process for waivers of code requirements it is possible to install ramps that are compliant with the ADA Guidelines and city agency codes. These city agencies routinely provide waivers to address alternate ramp dimensions to increase the number of safe sidewalk ramps for people with disabilities." [Exhibit 10]

37.     According to the December 18th Esquenazi Aff., the construction of a permanent ramp "is expected to be completed within two days and will be performed by a welder." [*Id*.].

**Plaintiff's position.** Plaintiff cannot ascertain the source of information on which GBA relies in its contention in ¶ 37. "Id." refers to Mizrahi's Declaration, an exhibit which was not filed with the Court. In her Supplemental Affidavit, dated December 13, 2024, Ms. Esquenazi stated the following: "the cost to build the Title III ADA compliant proposed ramp plan as depicted in my architectural drawings attached hereto, will cost approximately $8900 and may be achieved by purchasing a prefabricated metal ramp. It is expected to be completed within two days and will be performed by a welder." [Exhibits 6 and 11]

Dated: February 2, 2024

*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Attorney for Plaintiff
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel: (347) 796-0712
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 2, 2024, I filed the foregoing Plaintiff's Reply to Defendant GBA 526 LLC's Statement of Material Facts with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record.

February 2, 2024

Respectfully submitted,

*Michael Grinblat*

Michael Grinblat, Esq. (4159752)

Attorney for Plaintiff
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel:  (347) 796-0712
Email: michael.grinblatesq@gmail.com